UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                                                                     Case No. 08-20177

MELVYN TOZER,                                                         Honorable Arthur J. Tarnow

       Defendant.
_____/

## OPINION AND ORDER

Now before the court is the Government's Response to the Court's finding that the search warrant affidavits did not establish probable cause to believe the items to be seized were located on the premises to be searched [17].

## FACTUAL AND PROCEDURAL HISTORY

Defendant was charged with tax evasion following the execution of search warrants on his residence and business. According to the Affidavit in Support of Search Warrant, an investigation of Defendant began in June 2005 after a confidential source (CS-1) provided the affiant, Karli Pegher (a special agent with the Internal Revenue Service) with information that Defendant was not claiming all of the income earned at his business, Magic Touch Salon. *See* Defendant's Motion to Suppress Evidence Seized Pursuant to Search Warrants, Exhibit A at ¶ 1. CS-1 had attempted to purchase the salon from Defendant in 2004. *Id.* at ¶ 3. CS-1 claimed that

Defendant showed him the books and records of the salon and admitted that some income was not reported.[1] *Id.* at ¶ 5-6. Affiant compared the tax returns of Defendant with the week #52 daily sheets for 2001, 2002, and 2003 obtained from CS-1 and found discrepancies between the amounts on the returns and the year to date amounts on the daily sheets.[2] *Id.* at ¶ 7.

CS-1 indicated that after Defendant sold him the salon, Defendant removed his business records from the business property. *Id.* at ¶ 8. CS-1 stated that Defendant's records were kept in a locked office upstairs at the salon. *Id.* at ¶ 8. CS-1 also stated that the salon failed under his ownership and that Defendant again took over ownership in July 2005.[3] *Id.* at ¶ 10. After obtaining this information from CS-1, the agent indicated that she corroborated the information and noted that CS-1 is "well known to IRS-Criminal Investigation and is deemed to be a highly credible source."[4]

---

[1] The affidavit also states that when CS-1 attempted to purchase the salon, Defendant requested that CS-1 pay him a $35,000 non-refundable deposit to look at the books and records of Magic Touch. *See* Defendant's Motion to Suppress Evidence Seized Pursuant to Search Warrant, Exhibit A at ¶ 3. CS-1 refused the offer but eventually made the purchase deal without paying the $35,000. *Id.* at ¶ 4. However, the affidavit goes on to note that as part of the negotiations, Defendant did show the books and records to CS-1. *Id.* at ¶ 5.

[2] The affidavit neither indicates who CS-1 obtained the daily sheets from, nor how he obtained them.

[3] According to the affidavit, a contingency of the sale of the salon was that if the business failed, Defendant would take over the business. *See* Defendant's Motion to Suppress Evidence Seized Pursuant to Search Warrant, Exhibit A at ¶ 4.

[4] CS-1 was of course the individual who had purchased the salon from Defendant. What is not indicated in the affidavit that was submitted to the magistrate is that CS-1 was a former CID agent (Criminal Investigations Unit of the Internal Revenue Service).

2

*Id.* at ¶ 12. Defendant's garbage and mail were inspected and he was surveilled. *Id.* at ¶ 14-19.

Based on the Affidavit, the magistrate signed the search warrants for Defendant's residence and business on December 14, 2005.[5] The warrants were executed on December 19, 2005; records were ultimately seized and Defendant was charged with tax evasion.

Defendant subsequently filed two motions with this court: A Motion to Suppress Evidence Seized Pursuant to Search Warrants [12] and a Motion to Suppress Evidence and Request for Hearing Pursuant to *Franks v. Delaware* [13]. Defendant argued in his Motion to Suppress Evidence Seized Pursuant to Search Warrants that the searches violated his Fourth Amendment rights because the warrant lacked probable cause and the warrant affidavit provided no probable cause that a crime had occurred, nor did the affidavit establish that evidence of a tax crime was located at the places searched. Defendant argued that CS-1 did not provide detailed information about criminality inside of Defendant's home or the salon.

Defendant argued in his *Franks* motion that the affidavit prepared by agent Karli Pegher included numerous misstatements and omissions. Defendant also

---

[5] Defendant argues in his *Franks* motion that the IRS and CS-1 coordinated the execution of the search warrant to take place after Defendant signed the mutual release agreement on December 15, 2005 transferring the salon back to Defendant. Defendant maintains this was done to insulate CS-1 from any potential litigation Defendant might initiate. The government argues in response that there was no need for a release agreement because of the terms of the original contract.

3

asserted that CS-1 stole the daily sheets containing the financial information from the salon. Defendant sought an evidentiary hearing pursuant to *Franks*.

The government argued in response that the affidavit included independent corroboration of the information CS-1 gave to affiant. Affiant compared financial figures received from CS-1 with Defendant's tax returns. The government maintained that the records CS-1 gave to affiant were obtained from Defendant but even if CS-1 took them from Defendant, the government asserts that there is no evidence that affiant knew they were stolen. Thus, Defendant failed to "make the preliminary substantial showing" required by *Franks* for a hearing to be held.

At the hearing on May 19, 2009, the court granted Defendant's Motion to Suppress Evidence Seized Pursuant to Search Warrant [12]. Specifically, the Court determined that although there was probable cause to believe, based on the confidential informant and the corroboration that was done as indicated in the Affidavit in Support of Search Warrant, that Defendant had committed a crime, there was not probable cause for Defendant's residence and business, the Magic Touch Salon, to be searched. The government had not established the required "nexus" between the residence and business and evidence of a crime; in other words, there was no probable cause that either place contained evidence of a crime. Since the court found no probable cause that either place contained evidence of a crime, the court did not have to hold a *Franks* hearing to address whether any possible statements in the

4

affidavit were deliberately or recklessly false.

The court held its ruling in abeyance to give the government an opportunity to file a supplemental brief asking the court to reconsider its ruling. The government filed its Supplemental Brief [17] on June 5, 2009. Defendant filed a Reply [19] on June 30, 2009.

## **DISCUSSION**

The government now argues that "[a]lthough this court did not make a specific finding that probable cause, if it existed, was stale at the time the warrants were executed, there was a direct implication that the information relied on was old." *See* Government's Response at 11. The government contends that this case is similar to past cases where courts have upheld search warrants that asked for records from several years ago.

The court's finding that there was no probable cause that Defendant's residence and home contained evidence of a crime was not based on the fact that the warrant was issued in 2005 and the allegations of tax evasion were for the years 2001 through 2003. Indeed, had the Affidavit in Support of Search Warrant indicated sufficient proof that the records were located at the business or home, the gap between the date of the records and the date of the warrant would not prohibit a finding of probable cause. However, as the court found at the May 19, 2009 hearing, the Affidavit in

5

Support of Search Warrant indicated that CS-1 stated that after he purchased Magic Touch from Defendant in June 2004, Tozer "removed his business records from the business property." *See* Defendant's Motion to Suppress Evidence Pursuant to Search Warrants, Exhibit A at ¶ 8. Nowhere in the affidavit does it indicate that these records were then brought to Defendant's home and kept there in the year and a half period between the sale of the business and the time the warrant was executed. Affiant did not represent that CS-1 had ever observed these items in Defendant's home. Although the government argued that the search of Defendant's garbage at his home (¶ 14 and 15 of the Affidavit) provided evidence that the business records were in the home, the items found only established that the home belonged to Defendant. None of the items found were the financial records of the business. While the government would like this court to assume that the records were brought to and stored in the home, this court declines to do so since the affidavit is void of any indication that the records were ever in Defendant's residence.

The government also notes in its Supplemental Brief that although CS-1 had indicated that Defendant removed boxes at the time the business was sold, Defendant had returned to running the business in the months prior to the execution of the search warrant. The government maintains that business records for this period would have existed on the business premises and that this information would be relevant to the crime that was being investigated (tax evasion for the years 2001 through 2003).

6

2:08-cr-20177-AJT-SDP Doc # 20 Filed 11/05/09 Pg 7 of 12 Pg ID 213

However, as the government conceded in response to the Court's questioning at the May 19, 2009 hearing, it had no evidence that Defendant was continuing to engage in criminal activity following his return to ownership of the business. Therefore, there was no probable cause for the government to be searching for those recent records.

Although the government has not provided any ground for the court to reverse its ruling regarding the lack of nexus between the alleged crime and the locations searched, the government requests in the alternative that the evidence is still admissible under the good faith exception to the exclusionary rule. *See United States v. Leon*, 468 U.S. 897 (1984). Defendant previously addressed the issue of good faith in his Motion to Suppress Evidence Pursuant to Search Warrant. However, the government did not address good faith in its initial response to the motion and the issue was not raised at the hearing on May 19, 2009 after the court granted the motion to suppress.

*Leon* noted four situations where the good faith exception does not apply:

> (1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and, (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid.

*See United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005), *citing Leon*, 468 at 914-923. In determining whether the affidavit was so lacking in indicia of probable

cause as to render official belief in its existence entirely unreasonable, the court must examine "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *See United States v. Weaver*, 99 F.3d 1372, 1380-1381 (6th Cir. 1996).

Defendant asserted in his Motion to Suppress Pursuant to Search Warrants that the agent executing the warrant, who was also the affiant, knew or should have known that the affidavit did not allege sufficient facts that a criminal tax violation had occurred.[6] The government argues in its Supplemental Brief that the good faith exception applies here, arguing that "[t]his court has already found that the affidavits established probable cause to believe a crime had been committed and that the defendant had committed the crime. That finding alone should support a conclusion that the agents relied on the warrants in good faith." *See* Government's Response to Court's Finding at 19.

The Sixth Circuit has "found *Leon* applicable in cases where [it] determined that the affidavit contained a minimally sufficient nexus between the illegal activity and the place to be searched to support an officer's good-faith belief in the warrant's validity, even if the information provided was not enough to establish probable cause." *See United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004). However, without that nexus, the good faith exception cannot be applied to suppress evidence.

---

[6] This implicates the third exception cited in *Leon*.

8

In *Laughton*, supra, authorities received a tip from a confidential informant that he was able to purchase drugs from defendant. After police set up a controlled buy with the informant and monitored the purchase, they sought a warrant to search the residence where the controlled buy had taken place. *Id*. at 746. The warrant was issued and police seized drugs and firearms from the residence. *Id.* at 747. Defendant was charged with numerous felonies. *Id.* at 747. Defendant moved to suppress the evidence, arguing that the affidavit was not supported by probable cause. *Id.* at 747. The district court concluded that the affidavit lacked probable cause but found that the evidence was admissible under the good faith exception to the exclusionary rule. *Id.* at 747. The Sixth Circuit reversed, finding that the good faith exception did not apply. Citing several prior cases, including *Carpenter*, supra, where the court found that probable cause did not exist but the good faith exception applied, the Court concluded that "[t]he present case cannot be added to this list, because in each of the cases cited, unlike the case at hand, our review turned up some modicum of evidence, however slight, to connect the criminal activity described in the affidavit to the place to be searched." *Id*. at 749. Since "[n]o reasonable officer could have believed that the affidavit was not so lacking in indicia of probable cause as to be reliable," the good faith exception did not apply. *Id.* at 751.

Here, similar to *Laughton*, there was no nexus connecting the alleged criminal activity with the places to be searched. The Affidavit indicates that Defendant

9

"removed his business records from the business property" after CS-1 purchased the salon from him. *See* Defendant's Motion to Suppress Evidence Seized Pursuant to Search Warrants, Exhibit A at ¶ 8. Nothing in the affidavit indicates that Defendant ever returned those records to the salon. Although affiant attempted to corroborate CS-1's information with a walk through of the salon, that effort did nothing to establish that the records removed after the sale of the salon were brought back there. *Id.* at ¶ 20. Furthermore, surveillance of Mr. Tozer on one date carrying unidentified papers from his vehicle into the business does not establish a nexus between the business and the alleged crime.

The affidavit also failed to establish a sufficient connection between Defendant's residence and the records. The affidavit is void of any indication as to where the records went after they were removed from the business property. Although affiant attempted to connect the records to the home (it cannot be said that she was trying to corroborate any testimony of CS-1 regarding the records in the home since the affidavit does not indicate he had observed any records in the home or had even been inside it), this effort failed to provide a nexus. The following items were discovered in defendant's trash after it was collected and search: A receipt for rental property, IRS estimated payment tax forms, an application for a golf club membership, empty bank envelopes, a monthly statement for a yacht club, and an empty bank check box. Defendant's Motion to Suppress Evidence Seized Pursuant

10

to Search Warrants, Exhibit A at ¶ 14-15. None of these items provide any basis for concluding that Defendant retained business records for 2001 through 2003 in his home. Furthermore, the other items found, an application for a temporary sign permit for the salon and a magazine addressed to "Melvyn A. Tozer and Magic Tch Beauty Sln" sent to his home address, do not provide any basis for a determination that the business records removed from the salon when Defendant sold it were being kept in the home.

Additionally, the affidavit indicates that a mail cover instituted on the residence indicated that items sent to the home were addressed to both Defendant and to "Magic Touch Hair Salon."[7] This does not provide a nexus between the home and the alleged crime.

As there is not a minimally sufficient nexus between the alleged illegal activity and the places to be searched to support an officer's good-faith belief in the warrant's validity, the evidence seized must be suppressed.

## II. CONCLUSION

Accordingly, this Court denies the government's application to reconsider its May 19, 2005 ruling. Defendant's Motion to Suppress Evidence Seized Pursuant to Search Warrants [12] is **GRANTED.**

---

[7] The affidavit does not indicate what exactly these mail items were.

11

**SO ORDERED.**


S/ARTHUR J. TARNOW
Arthur J. Tarnow
United States District Judge

Dated: November 5, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 5, 2009, by electronic and/or ordinary mail.

S/THERESA E. TAYLOR
Case Manager